O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN MCCLURE, | ) Case No. EDCV 10-1260-DTB |
| Plaintiff, | ) |
| vs. | ) ORDER REVERSING DECISION OF ) COMMISSIONER AND REMANDING ) FOR FURTHER ADMINISTRATIVE |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) PROCEEDINGS ) |
| Defendant. | ) ) |
| _____ | ) |

Plaintiff filed a Complaint ("Complaint") on August 27, 2010, seeking review of the Commissioner's denial of her application for Supplemental Security Income. In accordance with the Magistrate Judge's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on May 5, 2011. Thus, this matter now is ready for decision.[1]

/ / /

---

[1] As the parties were advised in the Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

**DISPUTED ISSUES**

1. Whether the Administrative Law Judge ("ALJ") erred by not obtaining the testimony of a vocational expert ("VE"). (Jt. Stip. 3-7.)

2. Whether the ALJ properly considered the examining psychologist's opinion. (Jt. Stip. 7-12.)

3. Whether the ALJ provided a complete and accurate assessment of plaintiff's residual functional capacity ("RFC"). (Jt. Stip. 12-14.)

**DISCUSSION**

**I. The ALJ properly considered the examining psychologist's opinion and the RFC determination was complete and accurate.**

Plaintiff claims in Disputed Issue Two that the ALJ failed to properly consider the opinion of Dr. Nick Andonov, who conducted a complete psychological evaluation of plaintiff in April 2008. (Jt. Stip. 7-9.) Similarly, plaintiff claims in Disputed Issue Three that the ALJ's assessment of her RFC is erroneous because it failed to include limitations posited by Dr. Andonov. (Jt. Stip. 12-14.)

As part of his evaluation, Dr. Andonov administered a series of psychological tests to plaintiff. (AR 221-25.) Notably, during one of the tests, Part B of the Trail-Making test, Dr. Andonov discontinued testing after two minutes because plaintiff was "confused" and "did not grasp number to letter trailing." (Jt. Stip. 7-8; AR 224.) Following the testing, Dr. Andonov completed a functional analysis that found that plaintiff "understands simple instructions," "will have difficulties getting along with peers because of her anger," and has "obvious" slowness. (AR 225.) Dr. Andonov also determined that plaintiff has a Global Assessment of Functioning ("GAF") score of 50.[2]

---

[2] A GAF score represents a clinical evaluation of an individual's overall
(continued...)

Based on Dr. Andonov's evaluation, a state agency medical consultant concluded that plaintiff's mental functional capacity "would not preclude unskilled work activity in a low-stress, non-public setting." (AR 247.) The ALJ gave great weight to the state agency medical consultant's conclusion and found that plaintiff has an RFC, in pertinent part, for "unskilled work activity in a low-stress, non-public setting." (AR 14.)

The crux of plaintiff's claim in Disputed Issue Two is that the ALJ's RFC determination is erroneous because the ALJ failed to consider or discuss the impact of Dr. Andonov's opinion that plaintiff "will have difficulties getting along with peers because of her anger" and has a GAF score of 50. (Jt. Stip. 8). Plaintiff argues that these limitations are not captured by the ALJ's RFC determination that plaintiff is limited to "unskilled work activity in a low-stress, non-public setting." (Jt. Stip. 8-9.) In Disputed Issue Three, plaintiff raises essentially the same argument to dispute the ALJ's RFC determination. (Jt. Stip. 13.)

Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.[3] Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Frost v. Barnhart, 314 F.3d 359, 366 (9th Cir. 2002); Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). An RFC assessment must take into account all of a claimant's medically

---

[2](...continued)
level of functioning. A GAF score of 41 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep job.) Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") (American Psychiatric Ass'n ed., 4th ed. 2000).

[3]   Non-exertional limitations are those that do not directly affect a claimant's strength and include mental, sensory, postural, manipulative, or environmental limitations that affect a claimant's ability to work. Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 579 (9th Cir. 1988).

determinable impairments and their resulting symptoms. <u>Light v. Social Security Admin.</u>, 119 F.3d 789, 793 (9th Cir. 1997) ("In determining [a claimant's] residual functional capacity, the ALJ must consider . . . the aggregate of [his or her] mental and physical impairments."); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *5 ("The RFC assessment must be based on all of the relevant evidence in the case record.")

Neither of the two limitations identified by plaintiff from Dr. Andonov's evaluation calls into question the accuracy or completeness of the ALJ's RFC determination. The first limitation at issue, that plaintiff "will have difficulties getting along with peers because of her anger," is encompassed by the ALJ's determination that plaintiff is limited to unskilled work activity in a low-stress, non-public setting. By definition, unskilled work activities, at all levels of exertion, "ordinarily involve dealing primarily with objects, rather than with data or people." SSR 85-15, 1985 WL 56857 at *4.

Nor does the second identified limitation from Dr. Andonov's evaluation, the GAF score of 50, warrant a different result. The Commissioner has no obligation to credit or even consider GAF scores in the disability determination. <u>See</u> <u>Howard v. Commissioner of Social Sec.</u>, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); <u>see</u> also 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . . is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings."). Even if consideration of the score was required, plaintiff's score of 50 is not so low that it raises any serious question about the accuracy of the ALJ's RFC determination. <u>See</u> <u>Quaite v. Barnhart</u>, 312 F. Supp. 2d 1195, 1200 (E.D. Mo. 2004)

(ALJ's disregard of GAF score of 50 did not warrant reversal because the score did not necessarily establish an impairment seriously interfering with the claimant's ability to perform basic work activities).

Thus, Disputed Issues Two and Three do not warrant reversal of the Commissioner's decision.

## II. Reversal is warranted based on the ALJ's failure to obtain the testimony of a VE.

Plaintiff claims in Disputed Issue One that the ALJ was required to obtain the testimony of a VE in light of the evidence of plaintiff's significant non-exertional limitations. (Jt. Stip 3-4; AR 14.) Instead of calling a VE, the ALJ relied on Rule 203.21 of the Medical Vocational Guidelines to determine (on the basis of plaintiff's exertional capability for medium work, age, education, and previous work experience) that plaintiff could perform work in the national economy, and, therefore, was not disabled. (AR 16.)

At step five of the five-step disability evaluation, the burden shifts to the Commissioner to prove that the claimant is capable of engaging in other jobs that exist in substantial numbers in the national economy. Valentine, 574 F.3d at 689. There are two ways for the Commissioner to meet this burden: (1) By the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines ("grids"). Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1223 n. 4 (9th Cir. 2009) (citing Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).) The grids are "predicated on a claimant suffering from an impairment which manifests itself by limitations in meeting the strength requirements of jobs ('exertional limitations'); they may not be fully applicable where the nature of a claimant's impairment does not result in such limitations ('non-exertional limitations')." Lounsberry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006). The Commissioner's

need for efficiency justifies use of the grids at step five, but only when the grids "completely and accurately represent a claimant's limitations." Tackett, 180 F.3d at 1101; see also Widmark v. Barnhart, 454 F.3d 1063, 1069 (9th Cir. 2006); Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). "At step five a vocational expert's testimony is required when a non-exertional limitation is 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitation." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988).)

Based on the record and consistent with the Court's resolution of Disputed Issues Two and Three, there was substantial evidence supporting the ALJ's determination that plaintiff's non-exertional limitations consisted of her restriction to "unskilled work activity in a low-stress, non-public setting." (AR 14.) Nonetheless, such limitations were sufficiently severe so as to significantly limit the range of work that plaintiff could perform and to render the grids inapplicable. See Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988) (grids were inapplicable and VE testimony was required because, even though the claimant could perform a wide range of jobs, he was limited to jobs that "were not highly stressful, did not require comprehension of complex instructions, and did not require dealing with the public"); see also Burkhart, 856 F.2d at 1341 and n. 4 (same where the claimant had to avoid "stressful environments" and had problems with his hands and vision). Thus, the ALJ was required to obtain the testimony of a VE to identify specific jobs within plaintiff's abilities and erred in not doing so.

**CONCLUSION AND ORDER**

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. See, e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (as amended); Lewin v. Schweiker, 654 F.2d 631,

635 (9th Cir. 1981).  Remand is warranted where additional administrative proceedings could remedy defects in the decision.  <u>See</u>, <u>e.g.</u>, <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984); <u>Lewin</u>, 654 F.2d at 635.  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004); where the record has been fully developed, <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, <u>Bilby v. Schweiker</u>, 762 F.2d 716, 719 (9th Cir. 1985) (per curiam) (as amended).

This is not an instance where no useful purpose would be served by further administrative proceedings or where the record has been fully developed.  Rather, this is an instance where additional administrative proceedings could remedy the defects in the ALJ's decision.

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.[4]

DATED: November 7, 2011

/s/ David T. Bristow

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

---

[4] It is not the Court's intent to limit the scope of the remand.